[Crim. No. 3800. Second Dist., Div. Three. Dec. 14, 1944.]

THE PEOPLE, Respondent, v. JOHNNIE L. HARRIS, Appellant.

Walter L. Gordon for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

DESMOND, P. J.—A jury found defendant guilty of kidnaping and of violating section 288a of the Penal Code of California. He appeals from the judgment "and from the whole thereof" upon the grounds that the evidence offered at his trial was insufficient to sustain a judgment of convic-

tion and that the verdicts rendered by the jury were contrary to law and the evidence.

Examining the transcript we find that an attempt was made by appellant to establish an alibi which would be sufficient to protect him from adverse verdicts on the offenses which, according to the complaining witness, were committed between eight and ten o'clock of the night of August 31, 1943. He was unsuccessful in that attempt, the jury preferring to accept the testimony of the complaining witness, a boy of fifteen years named Henry, and his companion, William, of the same age. It appears from their testimony that they were employed by a catering company in the southern part of Los Angeles, and on the night in question, shortly after eight o'clock, quitting time, they started to walk north on the west side of Central Avenue. When they arrived near 51st or 52nd Street they were hailed by the appellant who was seated in an automobile on the opposite side of Central Avenue. Both boys described the automobile to the jury as a "four door gray sedan," Henry later saying that "It was a grayish, real light brown. It looked more like a grayish color, a light tan." Upon rebuttal he testified that he recognized a car viewed by him in a parking lot during the trial, following testimony of appellant's sister, Mrs. Murphy, as the same car he was in with the defendant on August 31, 1943. A photograph of this car was introduced in evidence showing it to be a two-door automobile. Mrs. Murphy had testified that it was her automobile, describing it to the jury as a 1937 Pontiac two-door sedan, dark gray in color and carrying license number 67B591. This is the same number which William swore he copied on a piece of newspaper from the license tag of the car in which he saw appellant drive Henry away. He further testified that he showed that number to the police officer and that he saw appellant at the Newton Street police station about two hours later.

Henry testified that in the back of the car in which he was taken away he saw a red pocket handkerchief and a light socket, both of which articles were introduced in evidence. They were later identified by Mrs. Murphy as belonging to her. Toward the close of the trial Henry was asked to explain why he testified that he thought there were four doors on the automobile, and answered: "Because it is a long sedan, and I was riding in the front seat, and there was as much room in the back seat as there was in the front seat, but I never did get out of the back door, and I figured it to

be a two door sedan. Q. You mean a four door sedan? A. I mean a four door sedan.'' This explanation apparently was accepted by the jury as satisfactory, possibly because of the further statement of Henry under cross-examination that he did not open any door to leave the car and got in the back seat when ordered there by the appellant, but ''crawled over the seat, over the front back of the seat,'' meaning undoubtedly over the back of the front seat. The jurors, being satisfied that Mrs. Murphy's two-door automobile was the one in which Henry was taken away, were then in position to determine whether his account of what occurred that night was worthy of credence.

As to the kidnaping charge, Henry's story was corroborated by William, no material variances appearing in the testimony of the two boys. This was to the effect that the defendant represented that he was sent by Smoot Smith, Sheriff of Dallas County in Texas, to get a boy named Freddy Brooks, saying, according to William, ''And I am going to take you boys down,'' and ''I asked him then if he had any identification to show that he was an officer, and he said, 'Never mind,' that we must go and get in the car, and he got Henry's pocket book there and gave it back to him, and I started walking away from the car and he said, 'If you don't want a damned broken leg you had better come back here, boy,' and I walked back to the car and he said he had a picture, and he said he was going to see if it was one of you all, and I asked him to show us the picture if he had it, and he said no, that his friend had it, and when he said that he said, 'I am going to take Henry and leave you here, Turner,' and he says, 'I will bring him right on home, you go and get in bed and I will bring him home, or either send him home,' and I said, 'O. K.,' and when he got in the car I saw he did, he went over there, and I said that he might be a police officer, and he got in the car, and he opened the door there, and I asked Henry for seven cents for car fare, and when the car pulled away I got his car license, and I got his license number, and walked down seven blocks on Central Avenue and I called the officers, the first one of the officers there. . . . He [appellant] asked Henry where did he live in Dallas, and he said that he lived in East Dallas, on Spring avenue.'' According to Henry, appellant then said: ''Well, ... Henry, I had better take you down.' He said, 'William, I will let you go, you look like a pretty good boy,' and he said, 'If you are not the one,' he said, 'I will bring you home

or see you get back home.' I thought that he was a plain clothes police officer, and I was kind of afraid. . . . Then I got in the car."

Henry then told the jury that appellant drove with him in a southerly direction to the neighborhood of the Goodyear plant, where he stopped on a dark street and directed him to get in the back seat. "He said, 'You get in that back seat,' and I said, 'I am not going in the back seat,' and I thought maybe that he had a weapon of some kind, and I didn't want him to hurt me." Then followed in complete detail the boy's recital of the manner in which he was mistreated by appellant, constituting to anyone who reads the record a violation by defendant of section 288a of the Penal Code.

Some point is made by appellant's counsel of the fact that in describing the offense the boy used a singular noun where ordinarily the plural form is used in naming a certain part of the body, and argues on the basis of *People* v. *Angier* (1941), 44 Cal.App.2d 417 [112 P.2d 659], that "such evidence does not measure up to that approach to reasonable moral certainty which the law requires in order to convict a man upon this charge." We have read the Angier case and find that it reverses a conviction of violating section 288a, the testimony of two children, aged seven and five, being couched in such artificial, childhood language concerning parts of the human anatomy and of the acts of the defendant that it could not be said that, beyond a reasonable doubt, the offense charged had been committed. But in the instant case no such uncertainty arises, the fifteen-year-old complaining witness being explicit in every detail.

While appellant makes no argument and cites no authority in support of the claim that his conviction of the crime of kidnaping is unsupported by the evidence, we feel that such claim is effectually refuted by the recent case of *People* v. *Brazil* (1942), 53 Cal.App.2d 596 [128 P.2d 204]. There, a gun was exhibited and the complaining witness was told to get into the automobile because the defendant was going to take her to the police station. While no gun was displayed in the instant case, the orders of the defendant were carried out under fear induced by oral threats. Henry testified, when asked whether he got into the car willingly: "Well, he threatened my friend and I thought that he was a plain clothes police, and so I got in the car to keep from having any trouble, because I didn't want to get in any trouble with no police."

■ Appellant asserts that there was some inherent improbability in the testimony of the prosecution witnesses, but in what particular he does not specify and we cannot see any basis for the assertion, under the rule and authorities quoted in *People* v. *Meyers* (1943), 62 Cal.App.2d 24 [144 P.2d 60].

The judgments are affirmed.

Shinn, J., and Wood (Parker) J., concurred.