[Crim. No. 1098.   Fourth Dist.   May 29, 1957.]

THE PEOPLE, Respondent, v. MARSHALL BANE BROYLES et al., Defendants; STEPHEN D. GULLY, Appellant.

Stephen D. Gully, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Carl Boronkay, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendants Broyles and Gully, with one Crabb, were charged in Count 1 of an information with kidnaping, it being alleged that on May 17, 1956 they wilfully, forcibly, etc., kidnaped and carried away one Virginia Jackson from a point in San Diego County to another part of said county. In a second count Broyles was charged with the crime of rape. The information also charged that Broyles and Gully had each suffered a prior conviction. They admitted the prior convictions and all three pleaded not guilty to the main charges. A jury found all three defendants guilty of kidnaping, and also found Broyles guilty of rape. Crabb was granted probation, and probation was denied to Broyles and

Gully. All three defendants were ably represented at the trial by different attorneys. Broyles and Gully personally filed notices of appeal from the judgments entered. Broyles later abandoned his appeal, and only the appeal by Gully remains for consideration.

It appears from the evidence that on the night of May 17, 1956, Broyles, Gully and Crabb were riding together in an automobile in an isolated area in a hilly section of San Diego County. As they rode along they saw an automobile parked on a back road, which was occupied by a Mr. Waites and Virginia Jackson. They returned to this spot and Broyles and Gully went over to the Waites car. Broyles turned a flashlight into the Waites car and told the occupants that he was a special deputy sheriff patrolling the back roads, that what they were doing was wrong, and that he would have to take them in. He asked to see Waites' driving license, and when Waites got out of his car and handed his driver's license to Broyles he heard Broyles say "Keep 'em covered." Broyles told Gully to call in and see if Waites and Mrs. Jackson had a record and if the car was stolen. Gully went back to their automobile and then came back saying that there was no record against them and the car was not stolen. Broyles told Waites he would have to take Mrs. Jackson down to the station. When Waites tried to induce him to let him take her home he said this was against the rules and he could not do it. When Waites suggested that they take Mrs. Jackson home and let him follow, Gully replied "Well, maybe we could." They refused to let Waites take her home and ordered Mrs. Jackson into their car, which Gully drove. Mrs. Jackson got into their car believing that these were police officers. They told Waites to drive on ahead and they would follow, which was done. After proceeding several miles Broyles told Gully to drive into a side road, which he did. When Waites discovered that they had turned off he circled back but was unable to locate them. He then proceeded to a police station, where he was told that no special police officer or special deputy sheriff was on duty in the kind of automobile in which the defendants were riding. An alarm was put out, and officers proceeded at once to that area to look for that car.

In the meantime Broyles told the driver of the car to stop in a secluded spot and then told Gully and Crabb to take a walk, which they did. Broyles then committed the rape in question. As Gully and Crabb were returning to the automobile they saw a car with officers in it approach and stop

at the scene. Gully and Crabb then took off through the brush and went on home. Mrs. Jackson told the officers she was the woman they were looking for, and they arrested Broyles.

The next morning Gully made a statement to the officers which was taken down in shorthand and transcribed. In this statement he said that he had been riding with Broyles and Crabb; that when they stopped near the other car he and Broyles got out while Crabb stayed in the car; that before getting out they turned on the car radio so it would receive nothing but static, in order to sound like the crackling of a police radio; that they had a red plastic flashlight; that Broyles told the occupants of the other car that he was a special deputy sheriff and wanted to see their identification; that Broyles told him to go back to the car and check with the radio as to whether the other car was stolen; that he went back to their car, fooled around a few minutes and then returned and told Broyles "they are not wanted"; that they put the girl in the back seat of their car and followed Mr. Waites downhill; that as they were driving along he could hear crying in the back seat and could hear "somebody getting hit"; that Broyles told him to turn to the left on another road; that after he drove a while Crabb took the wheel, and they went down to a gravel pit; and that when they arrived at the gravel pit Broyles told him and Crabb to "get lost," and they left. At the trial, Gully first admitted that these statements were true and later said that certain parts of them were not quite accurate. He also stated that when they first approached the other car he and Broyles "decided on having a little fun and scaring these people"; and that when Waites got out of his car he thought Waites might start a fight and he went over to assist Broyles in the event Waites started anything.

The appellant's only contention is that the evidence is not sufficient to support the judgment of conviction. The only argument made is that everything that was done was done by Broyles; that the appellant took no part in it other than being present; and that when they saw the sheriff's car drive up he and Crabb started running for home because "We thought that Mr. Broyles had done something wrong and that we didn't want to get involved."

There was ample evidence that the victim, Mrs. Jackson, was induced to enter the car driven by the appellant by the representations made by these parties that they were police

officers; that she believed these representations, and acted through fear; that they forced her into their car by giving orders which she felt compelled to obey; and that some force was used while she was being transported over a space of several miles. The evidence is sufficient to show the crime of kidnaping. (*People* v. *Trawick,* 78 Cal.App.2d 604 [178 P.2d 45] ; *People* v. *Flores,* 62 Cal.App.2d 700 [145 P.2d 318] ; *People* v. *Rosa,* 10 Cal.App.2d 668 [52 P.2d 542] ; *People* v. *Brazil,* 53 Cal.App.2d 596 [128 P.2d 204] ; *People* v. *Harris,* 67 Cal.App.2d 307 [154 P.2d 442].) That the appellant took an active part in this kidnaping clearly appears. He assisted Broyles from the start; he took an active part in representing that they were officers; he pretended to make a radio call, and made a false report thereon, for that very purpose; he helped out by suggesting to the victim that they might take her home; and he then drove the car in which the victim was transported. The evidence was sufficient to show, beyond any reasonable doubt, that the appellant actively participated in this kidnaping.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.