[Crim. No. 13577.   Second Dist., Div. One.   Apr. 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT E. PIERCE, Defendant and Appellant.

854

Robert E. Pierce, in pro. per., and Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Gordon F. Bowley, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—The trial court found defendant guilty of grand theft (§ 487, subd. 3, Pen. Code), escape (§ 4532, subd. (b), Pen. Code), kidnaping (§ 207, Pen. Code), and assault with intent to commit murder (§ 217, Pen. Code), and an alleged prior felony conviction (assault with a deadly weapon, July 21, 1966), case No. 322281, to be true. He was sentenced to the state prison on counts I, II, III and IV for the term prescribed by law, the sentences on all counts to run consecutively to the sentence imposed in case No. 322281 and to each other. He appeals from the judgment.

On August 27, 1966, defendant was a prisoner in custody at the Altadena sheriff's substation as a result of a sentence imposed in case No. 322281; he was a trusty, and in his capacity as janitor had freedom of the substation. In the early evening Deputy Klein's locker was broken into and his revolver and jacket were stolen; defendant was missing, although he had no permission to leave the substation and

knew this. Around 9 p.m. Steven Van Brasch, attendant at a service station across the street from the substation, was entering his automobile to go home; he felt a nudge in his back, turned around and saw defendant holding a revolver. Defendant told him, ''Get into the car. I have to go to Lakewood. If you get in my way, I will blow your guts out,'' and forced him to drive to Paramount. Van Brasch was in fear of his life because of the way defendant brandished the gun and other things defendant threatened. Defendant said he had broken out of jail and was going to Paramount to shoot a man who had been going around with his girl friend. They drove to Paramount and several times circled the Green Door bar where defendant's girl friend worked; they stopped, and Van Brasch went into a store for cigarettes but did not inform anyone of his plight. Everything Van Brasch did was with the view toward what was the best thing in his judgment at the time for preserving his life and the safety of others; also, he tried to make friends with defendant because he reasoned that defendant would not ''get jumpy'' and he was less likely to get hurt. Defendant showed him a picture of Eva Madore and told him to go into the Green Door and tell her she was wanted by her daughter at her apartment. Van Brasch did as he was told and then drove defendant to Eva's apartment; defendant ordered him to turn the lights off, leave the engine running and stay parked. Then defendant left the car and ran across the street with gun in hand; Van Brasch escaped in his automobile and informed the police.

As Eva and Alvin Lettau approached the door of her apartment, defendant met her brandishing a revolver. She resisted and defendant struck her over the head with the gun butt forcing her into the apartment. Once inside defendant forced Lettau to stand against the wall, then pointed the revolver at Eva and fired one shot hitting her in the left foot; she tried to flee into the bedroom but could not close the door against defendant who then fired a second shot missing her. At that moment, approximately 11:15 p.m., the police arrived. As they approached the front door they heard the shot; they identified themselves and asked defendant, ''Have you killed her?'' to which defendant answered, ''No, not yet.'' They asked him to come out of the apartment but he refused, nor would he allow Eva or Lettau to leave; he shouted, ''Don't come through the door . . . Anybody that comes through the door, I'll kill him.'' Sergeant Savage who knew defendant and the

circumstances of his prior felony conviction just months before, carried on a conversation with defendant through the door while the officers prepared a tear gas grenade. Around midnight the police threw it into the kitchen of the apartment. In the next 15 seconds defendant fired two more shots at Eva but missed her and came out the door partially bent over and threw the gun across the concrete. The gun was the revolver stolen from Deputy Klein; defendant's fingerprints matched those on the revolver.

Defendant was taken to the sheriff's substation. There was nothing unusual about his demeanor; he was neither nervous nor upset but appeared to be mentally alert, although apologetic. No force, threat of force, offer or promise was made to coerce a statement from defendant. The officers advised him of his constitutional rights in full compliance with *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] to which defendant replied that he "fully" knew his rights. Approximately 30 to 40 minutes after his arrest defendant made a free and voluntary confession.

Defendant took the stand but testified that he did not recognize Sergeant Savage, Van Brasch or Eva and did not know if he and Eva had gone together; and that he could not tell the court anything about the charges because he did not remember anything that had occurred.

■ Appellant contends that the evidence is insufficient to sustain the convictions of kidnaping and assault with intent to commit murder. As to the kidnaping, he argues that doubt was cast on Van Brasch's testimony to the effect that he was forced to drive him from the gas station through Paramount to the bar and then to Eva's apartment, because at different points along the journey Van Brasch had an opportunity to escape if he desired, thus his story that he was "forcibly abducted" is incredible.

The substantial evidence in the record supports the finding that defendant forcibly took Van Brasch from his gas station to Paramount (§ 207, Pen. Code). Pointing a stolen revolver in his back defendant ordered Van Brasch into the car, then pointing the gun to his stomach defendant ordered him to drive to Paramount, threatening, "If you get in my way, I'll blow your guts out." Van Brasch testified that he was in fear and believed defendant; that defendant told him he had broken out of jail and was going to Paramount to shoot a man; and that defendant kept brandishing his gun as he gave orders. Van Brasch did not "consent" to the abduction merely because in his judgment he could not safely escape

before defendant left his car in front of Eva's apartment; he testified that everything he did was "with the view towards what was the best thing in [his] judgment at that time toward preserving [his] own life and the safety of others." Further, Van Brasch testified that he tried to make friends with defendant because he figured he could, more or less, ease defendant and maybe himself, and didn't want defendant to be "jumpy" at him, for he was afraid he still might get hurt. Thus, Van Brasch's conduct was motivated by fear for his life, and he went along with defendant until a chance to escape was presented to him; he felt that his first clear chance to escape without danger came when defendant finally left his vehicle and ran across the street, and he took it. ▪ "The gravamen of the offense of kidnaping is some form of compulsion. (*People* v. *Guerrero*, 22 Cal.2d 183, 189 [137 P.2d 21].)

▪ The requisite force or compulsion need not consist of the use of actual physical force or of express threats; the taking is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he fears harm or injury from the accused, and his apprehension is not unreasonable under the circumstances. (*People* v. *Broyles*, 151 Cal.App.2d 428 [311 P.2d 88].)" (*People* v. *Dagampat*, 167 Cal.App.2d 492, 495 [334 P.2d 581].)

As to his conviction of assault with intent to commit murder, appellant claims there is no evidence that he specifically intended to take the life of another person—all he did was shoot Eva in the foot and fire three more shots, none of which hit her—and he was close enough to Eva to take her life had he wanted to.

▪ The intent with which defendant committed the assault was, of course, a question of fact for the trial court. (*People* v. *Becerra*, 223 Cal.App.2d 448, 450 [35 Cal.Rptr. 808].) ▪ The evidence is sufficient to support the trial court's finding that defendant assaulted Eva with intent to commit murder. While at the outset defendant told Van Brasch he was going to shoot a man who was running around with his girl friend, he nevertheless laid an elaborate plan to lure Eva to her apartment. Then defendant laid in wait and when Eva resisted him outside, defendant struck her over the head with the butt of the gun and with the gun forced her and her companion inside. There he pointed the gun at Eva, fired and hit her foot; when she tried to flee, defendant fired a second shot which missed her. Then the police arrived. Asked by the officer, "Have you killed her?" defendant answered,

"No, not yet." He refused to come out, or let Eva or her companion leave the premises, threatening that he would kill anyone who came through the door. Shortly after the tear gas grenade exploded in the apartment, defendant surrendered, but just before doing so fired two more shots which missed Eva. During all of this time defendant did no more to Lettau than to force him against the wall and order him to remain there. The inference that he tried to kill Eva and intended to do so is a reasonable one; the fact that his aim was poor does not absolve him from the intent with which he forced her into the apartment and fired the four shots.

In addition to the brief filed by his counsel, appellant submitted a brief of his own raising the insufficiency of the evidence to support the conviction of grand theft. "Grand theft is . . . committed . . . 3. When the property taken is an . . . firearm. . . ." (§ 487, Pen. Code.) Not only does the evidence establish that defendant broke into Sergeant Klein's locker and stole his revolver and jacket and used the firearm in his escape, kidnaping and assault, but that he confessed the crime to the police officers.

Nor is there substance to appellant's argument that he could not effectively waive his constitutional rights because he "was subjected to tear gas shortly before [his] confession plus his evident lapse of memory as indicated by his testimony." He concedes that at the sheriff's station he was properly advised by Sergeant Savage of his constitutional rights in accord with *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The sergeant testified that then defendant told him that he "fully" knew his rights. That defendant did in fact know his constitutional rights appears likely for the imprisonment from which he escaped resulted from a conviction of a felony (§ 245, Pen. Code) for which he had been arrested only nine months before.

"It is clear that the question of whether or not there has been a waiver is primarily a question for the trial judge and his determination thereon should not be disturbed by a reviewing court unless it is palpably erroneous." (*People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598]; *People* v. *Culp,* 241 Cal.App.2d 352, 357 [50 Cal.Rptr. 471]; *People* v. *Escobedo,* 250 Cal.App.2d 417, 428 [58 Cal.Rptr. 426]; *People* v. *Wood,* 250 Cal.App.2d 911, 919 [59 Cal.Rptr. 317]; *People* v. *Sosa,* 251 Cal.App.2d 9, 17 [58 Cal.Rptr. 912].)

The following supports the trial court's finding that

defendant intelligently waived his constitutional rights. Defendant could hardly have been suffering from the effect of the tear gas when he made his confession for he remained in Eva's apartment only 15 seconds after the tear gas grenade exploded, was exposed to the fresh air when transported to the sheriff's station, and made no statement to the officers until 30 to 40 minutes later after he was advised of his constitutional rights. Sergeant Savage had known defendant since April 1966. He testified that when defendant made his confession he was mentally alert, although he felt apologetic as to his actions; defendant appeared to be sober, to understand the proceedings, and not to be particularly nervous or upset; there was nothing about defendant's appearance or demeanor that struck him as being unusual; and while in defendant's relation with Eva his acts against her and her male companion, the result of jealousy, were not those of a normal person, defendant's behavior or mannerisms were not unusual. Further, while defendant testified that he suffered a loss of memory, from which he wants us to infer that he was not physically able to understand his rights and intelligently waive the same, the trial judge was entitled to, and we assume that he did, reject defendant's claim. Also, defendant was physically able and intelligent enough to tell Sergeant Savage in detail the truth concerning his activities on the evening of August 27, 1966; he gave the officer a recital of facts verified by the testimony of the prosecution witnesses.

Finally, it is claimed in the brief submitted by appellant that he was erroneously sentenced because all of the offenses were incident to one objective—contacting Eva Madore. At the time of pronouncement of judgment and sentence, the trial judge revoked probation in case No. 322281 (assault with a deadly weapon) and sentenced defendant to the state prison for the term prescribed by law; in the instant case, No. 328789, the judge denied probation on all four counts and on each sentenced defendant to the state prison for the term prescribed by law, the sentences to run consecutively to the sentence pronounced in case No. 322281 and to each other. This was proper and did not constitute double punishment under section 654, Penal Code.

The evidence establishes that even though defendant's ultimate objective was to see Eva, from the time he broke into Deputy Klein's locker his conduct harmed at least three persons. As to the grand theft, the victim was Deputy Sheriff Klein whose revolver and jacket were stolen by defendant; as

to the escape, the offended one was the State of California for defendant was serving time under sentence for a felony conviction; as to the kidnaping, Van Brasch was the victim; and Eva was the victim of the assault with intent to commit murder. Defendant's course of conduct harmed more than the one person; his ultimate objective was accomplished by a series of separate acts with intent to harm more than Eva and by means likely to cause harm to the several victims. Thus, defendant is more culpable in this conduct than one who harms only one, and is properly subject to greater punishment than one who chooses a means that harms only a single person. ''This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled. ■■■ Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' (*People* v. *Brannon,* 70 Cal.App. 225, 235-236 [233 P. 88]. . . .)'' (*Neal* v. *State of California,* 55 Cal.2d 11, 20-21 [9 Cal.Rptr. 607, 357 P.2d 839]; *In re Sheridan,* 230 Cal.App.2d 365, 374 [40 Cal.Rptr. 894].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 5, 1968.