Filed 3/1/13  P. v. Lucero CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICKY LUCERO,<br><br>    Defendant and Appellant. | H037618<br>(Monterey County<br>Super. Ct. No. SS032885A) |

On February 2, 2005, a Monterey County jury convicted defendant Ricky Lucero of forcible sodomy and sodomy in a state correctional facility.  (Pen. Code, § 286, subds.(c)(2) & (e).) [1]  After a court trial, the court found that defendant had a prior serious felony conviction for robbery and a prior felony conviction for negligent discharge of a firearm and that both convictions qualified as strikes. (§§ 1170.12, subd. (c)(2), 211, 246.3, 667, subd. (a)(1).)  The court imposed a term of 25 years to life for each conviction, stayed one of the terms, and added a five-year enhancement for the serious felony conviction. [2]

Defendant was sentenced in June 2005.  No appeal was filed.  However, subsequently, we granted defendant's motion for relief from default, and he filed his

[1]    All unspecified statutory references are to the Penal Code.
[2]    We have taken judicial notice of this court's unpublished opinion in defendant's prior appeal H032250.

notice of appeal in January 2008.  In that appeal, we reversed the judgment and remanded the matter for the limited purpose of conducting further proceedings on defendant's motion for new trial.

On November 1, 2011, the trial court denied defendant's motion for a new trial. Thereafter, defendant filed a timely notice of appeal.  In this appeal, defendant contends that he was denied the effective assistance of counsel by counsel's failure to investigate and present expert testimony regarding exculpatory evidence as to the forcible sodomy charge.  For reasons that follow, we reject defendant's claim.

## Facts[3]

On December 13, 2002, defendant, aged 42, and Steven M., aged 22, were inmates at Salinas Valley State Prison; they had been sharing a cell for approximately two weeks. Steven M. testified that that night, they watched TV together and then went to bed. Around 3:00 a.m., he was in the lower bunk trying to go to sleep when defendant, who weighed more than he did, suddenly put him in a choke hold and pinned him face down to his bed with his arms above his head.  It was difficult for Steven M. to breathe, and he thought he was going to pass out.  Defendant got on top of him, and Steven M. asked what he was doing.  Defendant responded, "Shut up, you are going to enjoy this . . . ." Steven M. responded, "You're sick.  Just kick back" and "What are you doing?  What the fuck are you doing?"  Undeterred, defendant grabbed a bottle of aftershave lotion, put some on his hand, rubbed Steven M.'s buttocks, and then forcibly sodomized him. Defendant continued to do so for 10 minutes and then went to the toilet and wiped his hands.  Steven M. did not yell out because there was no one to hear him.  Steven M. testified that as a "southern" Mexican, homosexuality is taboo.  He said that this was his first homosexual experience, and it was sickening.

---

[3]     The statement of facts is taken from our opinion in H032250.

After the assault was over, Steven M. got up and stood by the door of their cell until later that morning. Defendant watched him and warned that he or someone else would kill him if he told anyone. He laughed at Steven M., called him his "bitch," and said that it would be happening all the time, and he would enjoy it.

Later that morning, Steven M. met with Doctor Talbert, his psychological group leader, and reported what had happened. The doctor told prison authorities, and Steven M. was taken to the hospital for a sexual assault exam. He told medical personnel that defendant had choked, sodomized, and digitally penetrated him. He had severe anal pain. Although Steven M. had no visible injuries, his rectum was pink, indicating some bleeding. Swab tests revealed the presence of defendant's sperm. Defendant was also examined. He had cuts on his finger and knee. He said he cut his hand while cleaning the shower; he could not explain his knee injury.

Lieutenant Azell Middlebrooks and Investigator Antonio Rodriguez interviewed Steven M. and defendant. At times during the interview, Steven M. was demure, quiet, embarrassed, scared, and mad. Defendant was hostile and denied there had been any sexual activity, claiming instead that he and Steven M. "just had a conversation." According to defendant, Steven M. said that his wife knew he was gay or bisexual, which defendant thought was odd because Steven M. was not married. He could not explain why Steven M. would falsely accuse him.

Defendant testified that in prison, he was in the outpatient mental health program. On December 12, several days after Steven M. became his cellmate, they were watching TV in the cell. Steven M. was upset because his mother had insinuated that he was gay. Steven M. asked if he could massage defendant, and defendant agreed. Steven M. removed defendant's underwear. After a while, the massage became sexual. Steven M. massaged defendant's buttocks, digitally penetrated his anus, and asked if it felt good. Defendant said it did. When the massage was over, defendant sodomized Steven M. with his consent.

Defendant denied strangling Steven M. or otherwise restricting his breathing. He explained that he could not have sodomized an unwilling Steven M. because they were about the same size and in the same physical condition at the time.

Defendant said he was bisexual. He admitted telling the investigator that there had been no sexual activity but said he was embarrassed to tell the truth because a woman was present. He admitted that he resisted a medical examination. He explained that he was angry because he could not understand why he was being accused of wrongdoing for consensual sexual activity. He testified that at one point during their consensual activity, Steven M. asked him to take his penis out of his anus and insert his finger instead. According to defendant, he told Steven M. that he was going to tell his "homeboys" that Steven M. was a "sissy." Defendant opined that Steven M. falsely accused him because he was scared and wanted to save face with other inmates and show that he was not gay.

At trial, defendant was represented by Stan Evans, who had replaced defendant's previous attorney Rick West. West had declared a conflict of interest after defendant complained that he had failed to assert defendant's right to a speedy trial or challenge certain evidence.

*Proceedings Below*

After this court remanded the case to the trial court for further proceedings related to defendant's motion for a new trial, on August 1, 2011, newly appointed counsel filed such a motion raising issues of ineffective assistance of counsel, trial court error and *Faretta* error.[4] Relevant to this appeal, defendant's counsel urged as one ground in support of the new trial motion, "failure to call expert witnesses," specifically, referring to expert testimony "as to the effects of anal sex on the body, including the amount of rectal and anal tearage, differences in physiological responses between those [who] often have anal sex and those who do not, differences in physiological responses between those

---

[4]    In *Faretta v. California* (1975) 422 U.S. 806 the United States Supreme Court recognized that a defendant has a right to represent himself.

4

who have been forcibly versus consensually sodomized, and differences in physiological responses between those who have or have not used lubrication." The District Attorney filed opposition to the new trial motion on August 11, 2011; and defendant's counsel filed a reply on August 16, 2011. At a brief hearing held on August 18, 2011, the parties submitted the issue on the pleadings, subject to defendant's counsel producing a copy of the trial transcript.

Subsequently, in the wake of *In re Hill* (2011) 198 Cal.App.4th 1008 (*Hill*), counsel filed a supplemental brief in which new counsel argued that defendant's trial counsel was ineffective in failing "to consult any medical expert in the fields of injuries from choking, sodomy, or in the fields of forcible sexual intercourse and sodomy's affect [*sic*] upon the body." In particular, defense counsel asserted that "[t]rial counsel failed to call an expert witness to testify as to the effects of anal sex on the body of a person who regularly engaged in anal sex versus a person whom [*sic*] would be having anal sex for the first time as Steven M. claimed, and whether the SART nurse's examination was consistent with forcible sodomy or consensual sodomy." Attached to the supplemental brief was a copy of the Fourth District Court of Appeal's decision in *Hill*, *supra*, 198 Cal.App.4th 1008.[5] We note that no evidentiary hearing was held and no declaration from an expert witness was attached to the motion for a new trial.

In a lengthy written order, Judge Moody denied the motion for a new trial. Judge Moody noted that the essence of the trial "could reasonably be seen by defense counsel as an inevitable confrontation between the accuser and the accused over the question of force in the presence of the jury . . . ." Judge Moody noted, "[t]he attorney could have

---

[5] In *Hill*, *supra*, 198 Cal.App.4th 1008, the court held the petitioner in a petition for habeas corpus had not had effective assistance of counsel when his criminal defense counsel did not present an independent medical expert to challenge the expert testimony of another doctor regarding the alleged molestation of a young victim. (*Id.* at pp. 1025–1030.) In contrast to this case, the petitioner submitted declarations in support of his claim of ineffective assistance of counsel from his trial counsel, a medical expert, and a criminal defense expert. (*Id*. at p. 1017.)

produced an expert on the subject of absence of trauma to [Steven M.]' anus, but Ms. Nash's[6] statement was to the effect that only about half of the cases involving sodomy show trauma to the anus." Judge Moody concluded, "[i]t appears unlikely that an expert would have been able to say that her observations and test results were more consistent with consent than force, and there has been no claim that such testimony was or is available on these facts."

As noted, on appeal, defendant contends that he was deprived of the effective assistance of counsel by counsel's failure to investigate and present expert testimony regarding exculpatory evidence as to the forcible sodomy charge. Specifically he asserts given that in essence this was a credibility contest between Steven M. and him it was incumbent of defense counsel to present objective medical testimony that could have raised a reasonable doubt as to Steven M.'s assertion of force. Thus, as can be seen, defendant frames the issue as a claim of ineffective assistance of counsel at trial.

*Standard of Review*

Given the way the issue on appeal has been framed and argued, we are unsure if defendant is appealing the denial of his new trial motion, or the reinstatement of the original judgment. Either way we are required to decide if defendant was denied the effective assistance of counsel at trial. Accordingly, we set forth the standard of review applicable to both situations.

In general, " '[w]e review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard.' [Citations.] ' "A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion." '

---

[6]    At defendant's trial it appears that Cherie Nash, a registered nurse, who conducted a SART (sexual abuse response team) examination on Steven M., testified that she did not see any major injuries, although a swab yielded some pink-tinged substance. She testified that she reviewed studies that indicate "50 percent of the cases where there is sodomy involved have injuries and about 50 percent do not."

[Citations.]" (*People v. Thompson* (2010) 49 Cal.4th 79, 140.) Ineffective assistance of counsel, if proven, is a valid, nonstatutory ground for a new trial. (*People v. Fosselman* (1983) 33 Cal.3d 572, 582–583; *People v. Reed* (2010) 183 Cal.App.4th 1137, 1143.) Upon appeal from the denial of a new trial motion based on a claim of ineffective assistance or other denial of constitutional rights, we apply two distinct standards of review. We defer to the trial court's factual findings if supported by substantial evidence, but we exercise de novo review over the ultimate issue of whether the defendant's constitutional rights were violated. (*People v. Taylor* (1984) 162 Cal.App.3d 720, 724–725 (*Taylor*).)

"On appeal, all presumptions favor the trial court's exercise of its power to judge the credibility of witnesses, resolve any conflicts in testimony, weigh the evidence, and draw factual inferences. The trial court's factual findings, express or implied, will be upheld if they are supported by substantial evidence. [Citation.]" (*Taylor, supra,* 162 Cal.App.3d at p. 724.) However, the ultimate responsibility to measure the facts as found by the trial court against the constitutional standard must be exercised by the appellate court according to its independent judgment. (*Id.* at p. 725.) In examining claims of ineffective assistance of counsel, we give great deference to counsel's reasonable tactical decisions. (*People v. Hinton* (2006) 37 Cal.4th 839, 876.) If the record on appeal fails to shed light on why counsel acted or failed to act, we reject a claim of ineffective assistance unless counsel was asked for an explanation and failed to provide one or no satisfactory explanation exists. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Such claims are often more appropriately raised in a petition for writ of habeas corpus, in which the defendant may present more evidence concerning counsel's reasons for his actions or omissions. (*Id.* at pp. 265–267.)

On appeal, to establish ineffective assistance of counsel, a defendant has the burden of proving both that his counsel's performance was deficient under an objective standard of professional responsibility and that there is a reasonable probability that but

7

for his counsel's errors, he would have obtained a more favorable result at trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

Defendant failed to carry his burden below as he does on appeal. As noted, when a defendant challenges his conviction based on a claim of ineffective assistance of counsel, he must overcome two hurdles. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland, supra,* 466 U.S. at p. 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)

Defendant did not surmount the first hurdle below and he does not on appeal. He makes an inadequate showing that his trial counsel did not investigate and that he *could have* presented *favorable* expert testimony. In *People v. Datt* (2010) 185 Cal.App.4th 942, the defendant claimed his trial counsel had provided ineffective assistance by failing to present an eyewitness identification expert. This court held that defendant's contention "fail[ed] at its origin. He has not shown that his trial counsel *could have* presented any *favorable* expert testimony." (*Id.* at p. 952.) This court explained that even though the defendant had produced *testimony* at a motion for new trial "that a reasonably competent attorney would have *consulted* an expert on eyewitness identification," he produced no evidence that his trial counsel had failed so to do. (*Id.* at pp. 952-953.)

Here, the record before us does not disclose what actions, if any, trial counsel undertook to consult expert witnesses, nor has defendant shown that expert witnesses could have provided favorable testimony.[7] In his new trial motion, defendant offered

[7]     Judge Moody noted in his order that the assertion that "Evans [defendant's attorney at trial] 'didn't investigate,' while technically correct, fails to acknowledge that West [defendant's previous attorney] did investigate, using a professional investigator,

8

nothing except his own assumptions as to what trial counsel did or did not do and what an expert witness could have testified to at trial.[8]  Defendant repeats those assumptions on appeal in that he assumes that counsel failed to investigate and asserts that  "[t]he tenor of the exculpatory testimony that could have been presented in this case is that injuries are sometimes discernible in instances of first-time consensual sodomy, but are virtually always discernible in cases of first-time forcible sodomy."  Yet, below, defendant presented no evidence that trial counsel had failed to investigate and defendant had no expert ready to testify; his assertion as to what testimony an expert could have given was not even supported by a declaration from an expert.  Judge Moody highlighted this critical deficiency when he stated that it appeared "unlikely that an expert would have been able to say that [Ms. Nash's] observations and test results were more consistent with consent than force, and there has been no claim that such testimony was or is available on these facts."

Notwithstanding this deficiency at the new trial motion, defendant asserts that his "counsel adequately identified and pled a crucial deficiency in trial counsel's representation" and the "trial court's responsibilities under the due process guarantee of the state and federal [C]onstitutions and under Penal Code section 1044 were to convene an evidentiary hearing to determine whether such specific evidence was available."  Defendant urges this court to remand the matter for further proceedings.  Conspicuous by

and provided the results to Evans, who relied thereon.  No evidence has been presented either at the Marsden motion at trial nor in this de novo motion to establish that West's investigation was deficient or that Evans was acting unreasonably in relying on it.  Evidence of these matters is easily available even in the absence of Evans' file, as both West and his investigator are still present in the local legal community."  It appears that Judge Moody was assuming that Evans failed to investigate; nothing that we have found in the record on appeal shows that to be the case.

[8]      Specifically, counsel asserted "Trial counsel *apparently* did not seek the assistance or call as a witness any experts on the issue of the lack of injuries to [Steven M.]."  (Italics added.)

9

its absence is any relevant authority for this assertion.[9]  Furthermore, if defendant's assertions were correct, a defendant on appeal would only need to allege that his trial counsel was incompetent and he would then be entitled to an evidentiary hearing to attempt to prove his hypothesis.  On appeal, "[t]he burden of sustaining a charge of inadequate or ineffective representation is upon the defendant.  The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter."  (*People v. Stephenson* (1974) 10 Cal.3d 652, 661.)

Here, the record before us does not disclose what actions, if any, trial counsel undertook to consult expert witnesses, nor has defendant carried his burden of demonstrating that expert witnesses could have provided favorable testimony.  Thus, defendant's claim is not properly brought on direct appeal.  (*People v. Datt, supra,* 185 Cal.App.4th at p. 953.)  Without engaging in speculation, we cannot infer anything about the existence, availability, or probative force, of any expert testimony that defendant might have presented or the probable consequences of its use at trial.  (*People v. Wash* (1993) 6 Cal.4th 215, 269.)  Simply put, there is no evidence to support defendant's ineffective assistance of counsel claim.

*Disposition*

The judgment is affirmed.

---

[9]  Defendant's reliance on *People v. Jones* (2010) 186 Cal.App.4th 216 is misplaced. We need not discuss the case in detail.  It suffices to say that it is factually distinguishable, involving an ineffective assistance of counsel claim in the context of a suppression motion; testimony was presented below that established that counsel's performance was deficient in that defense counsel had a conflict of interest.  (*Id*. at pp. 221, 241.)  The trial court had found no ineffective assistance of counsel and thus, was not required to and did not conduct a new suppression hearing.  (*Id*. at p. 243.) Accordingly, the First District Court of Appeal remanded the case to the trial court to conduct a new suppression hearing.  (*Id*. at p. 245.)

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.

11