Filed 1/10/14  P. v. Todd CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C068975 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F03590) |
| v. | |
| WILLIAM MICHAEL TODD, | |
| Defendant and Appellant. | |

A jury found defendant, William Michael Todd, guilty of one count of murder in the first degree, and found true a sentencing enhancement of personal use of a deadly weapon, a knife.  He was sentenced to state prison for an indeterminate term of 25 years to life for murder, with a consecutive one-year term for personal use of a deadly weapon.

On appeal he contends that:  (1) the trial court prejudicially erred when it failed to instruct the jury on the lesser included offense of voluntary manslaughter; (2) he was prejudiced by ineffective assistance of counsel; (3) there was insufficient evidence to

1

support a first degree murder conviction; and (4) the trial court abused its discretion when it failed to relieve his counsel and appoint new counsel.

As none of the contentions has merit, we affirm.

FACTS

Memorial Day 2010 began with defendant and his wife, Traci, drinking beer at her cousin Larry Pinson's house. David Endres (the victim) and Susan Childress were also drinking beer with defendant, Traci, and Pinson. Pinson, Childress, and Endres were good friends. Defendant and Endres appeared to know each other because earlier that day, when Endres introduced defendant to Childress, he referred to defendant as "my friend Bill" and "a cool guy." There was no evidence that Endres had a prior relationship with Traci. At about 8:10 p.m., defendant and Endres rode in the same car with Pinson and Traci to Childress's apartment to continue drinking. Pinson stated that he did not recall any angry words or problems in the car ride over to Childress's apartment between defendant and Endres, or between Endres and Traci. Dorothy Lenz, Childress's sister, was also present in the apartment.

At one point, defendant, Endres, Pinson, and Traci were outside the front door on the landing smoking cigarettes, talking, and drinking beer. Pinson turned to put out a cigarette in an ashtray when he heard a thud. From "out of nowhere," defendant became mad, said something about Endres looking at his wife, and stabbed Endres in the chest. Endres was holding his chest, saying, "What the fuck?" Childress stated that, from inside her apartment, she heard Endres say, "What the fuck you do that for homeboy?" He then fell backwards through the front door, and Childress caught him as he fell in the doorway. Defendant immediately ran away. Blood was everywhere, and despite efforts to save his life, Endres died quickly.

There was no prior argument between defendant and Endres. No yelling, arguing, or punching occurred on the landing. Childress and Pinson thought that defendant and

2

Endres were friends. The attack was unprovoked. There was no evidence that defendant was suffering from paranoia, delusions, or hallucinations.

Endres was stabbed twice by a single-edged knife in essentially the center of his torso. One wound was on the lower left chest and measured four-and-a-half inches deep. It sliced open the bottom of his heart, causing the heart sac to fill with blood. The other wound was in the mid-upper abdomen and measured four inches deep. It cut the edge of his liver and perforated his stomach. Both wounds had rectangular hilt marks, meaning that the knife went all the way in with enough force to have the hilt leave a mark. Each wound could have been fatal by itself, but the wound to the heart would have caused death more rapidly. Endres's defensive wounds, cuts to his left palm and right little finger, indicated that he was aware that he was being attacked.

After stabbing Endres, defendant immediately ran down the stairs and away from the scene. Multiple eyewitnesses in the neighborhood testified that they saw defendant, who attempted to get into locked cars parked in the area, throw his wallet in someone's yard. Defendant entered a bush with his shirt on, and a few minutes later, left the bush shirtless. Defendant's keys were found in a bush in the neighborhood. Blood was found on defendant's shirt which matched Endres's DNA profile.

Pinson and Childress testified that they did not see defendant or Endres use methamphetamine that day. A blood sample from Endres had 0.08 milligrams per liter of methamphetamine and 0.02 milligrams per liter of amphetamine. A blood sample from defendant showed a level of 0.11 milligrams per liter of methamphetamine and 0.02 milligrams per liter of amphetamine. Defendant's level of methamphetamine could be considered in both the therapeutic range and the abuse range.

Philip Mitchell, a friend of Traci's, testified at trial that, in August 2009, defendant had attacked him with pepper spray or mace. Mitchell was traveling with Traci in a car to help get her things at her house because she was having domestic problems with

3

defendant. Before Mitchell and Traci arrived at her house, defendant pulled up in another car, jumped out, ran up to their car, and sprayed Mitchell with mace or pepper spray.

PROCEDURE

Defendant was charged by information with one count of murder (Pen. Code, § 187, subd. (a)),[1] and a sentencing enhancement of personal use of a deadly weapon, a knife (former § 12022, subd. (b)(1)). A jury found defendant guilty of first degree murder and found true the personal use enhancement. The trial court sentenced him to state prison for an indeterminate term of 25 years to life for the murder, and a consecutive one-year term on the enhancement for personal use of a deadly weapon.

DISCUSSION

I

*Failure to Instruct on Voluntary Manslaughter*

Defendant contends the trial court prejudicially erred when it failed to instruct the jury, sua sponte, on voluntary manslaughter. There was no error.

A court "must instruct on lesser included offenses when there is substantial evidence to support the instruction, regardless of the theories of the case proffered by the parties." (*People v. Barton* (1995) 12 Cal.4th 186, 203.) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

" 'Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter. (§ 192.)' [Citations.]" (*People v.*

---

[1] Subsequent undesignated references to sections are to the Penal Code.

4

*Breverman*, *supra*, 19 Cal.4th at p. 154.)  "For purposes of voluntary manslaughter, an intentional unlawful killing can lack malice when the defendant acted under a ' " 'sudden quarrel or heat of passion' " ' or when the defendant acted under ' "[an] unreasonable but good faith belief in having to act in self-defense." '  [Citation.]"  (*People v. Blacksher* (2011) 52 Cal.4th 769, 832.)

"Although section 192, subdivision (a), refers to 'sudden quarrel or heat of passion,' the factor which distinguishes the 'heat of passion' form of voluntary manslaughter from murder is provocation.  The provocation which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim [citation], or be conduct reasonably believed by the defendant to have been engaged in by the victim. [Citations.]  The provocative conduct by the victim may be physical or verbal, but the conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.  [Citations.]" (*People v. Lee* (1999) 20 Cal.4th 47, 59.)

Here, there was no substantial evidence to support the instruction because there was no evidence of sufficient provocation.  Before stabbing the victim, defendant accused him of looking at his wife.  No arguing, yelling, or fighting preceded defendant's attack on the victim.  Merely looking at another man's wife may provoke a dirty look or a punch in the nose, but it does not cause an ordinary person of average disposition to stab a person multiple times in the chest and abdomen.  Because the evidence was not sufficient to support the instruction on voluntary manslaughter, the trial court did not err by omitting it.

Defendant claims that the doctrine of invited error does not preclude his raising of the instructional issue on appeal.  Because we find no error, the invited error doctrine does not apply.

5

## II

### Ineffective Assistance of Counsel

Defendant makes three arguments asserting ineffective assistance of counsel: (1) counsel failed to insist on a jury instruction on voluntary manslaughter; (2) counsel failed to request a pinpoint instruction on provocation, thereby potentially reducing the murder verdict from first degree to second degree; and (3) counsel failed to timely review an expert's report. There was no ineffective assistance of counsel.

"The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant." (*People v. Stephenson* (1974) 10 Cal.3d 652, 661.) In order to prove ineffective assistance of counsel, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698].)

### A.    *Counsel's Failure to Request a Jury Instruction on Voluntary Manslaughter*

Defendant argues that he was denied effective assistance of counsel when defense counsel failed to request an instruction on voluntary manslaughter. As explained in part I, above, there was no substantial evidence of sufficient provocation, so defense counsel was not inadequate or ineffective when he failed to request a voluntary manslaughter instruction.

### B.    *Counsel's Failure to Request a Pinpoint Instruction on Provocation*

Defendant claims there was substantial evidence of provocation that would have entitled him to a pinpoint instruction that evidence of provocation may reduce a murder from first degree to second degree. He contends that counsel's failure to request a pinpoint instruction fell below the required standard of professional conduct and constituted deficient performance. We disagree.

6

Defendant claims that CALCRIM No. 522 should have been given, which instruction stated in relevant part: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder." (CALCRIM No. 522.)

Even assuming, for the purpose of argument, that defense counsel should have requested an instruction concerning provocation and the degree of murder, there was no prejudice. To determine the probability that the pinpoint instruction would have achieved a different outcome, we examine the instructions given in this case. The jury was instructed, using CALCRIM No. 520, to decide whether defendant committed murder and, if so, whether it was in the first degree or second degree. The court then instructed the jury using CALCRIM No. 521 on first degree murder. This instruction stated: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder."

7

Considering CALCRIM No. 520 and CALCRIM No. 521, which were given to the jury, we see that the jury was not precluded from finding defendant guilty of second degree murder rather than first degree murder based on provocation had they so chosen. CALCRIM No. 520 instructed the jury to decide between first degree and second degree murder. Then CALCRIM No. 521 expressly stated that, if the People failed to prove defendant acted willfully, deliberately, and with premeditation, the jury must find defendant not guilty of first degree murder. The instructions given provided the jury the framework to decide whether defendant was guilty of first degree or second degree murder. The jury found defendant guilty of first degree murder. In doing so, the jury concluded that defendant had acted with premeditation and deliberately killed Endres.

Defendant's contention fails because he has not demonstrated prejudice. Even if a pinpoint instruction had been given, it is not reasonably probable that defendant would have received a more favorable result.

C.      *Counsel's Failure to Call Defense Expert Witness*

Defendant contends that he was prejudiced by ineffective assistance of counsel because defense counsel promised in his opening statement that he would present a psychiatric expert but then failed to do so. Defendant claims that, had defense counsel timely reviewed the psychiatric expert's report, counsel would not have promised to call the expert witness.

1.      Relevant Background

In his opening statement, the prosecutor outlined defendant's motive for murder as jealousy involving his wife. Traci had made pretrial statements to the police that defendant became jealous when taking methamphetamine. However, Traci asserted her spousal privilege at trial and did not testify against defendant. During trial, the prosecutor did not refer to Traci's pretrial statements because of the privilege.

Defense counsel said in his opening statement that he would call Dr. Jennifer Chaffin, a psychiatrist, who would testify about defendant's amphetamine-induced

8

psychotic disorder with hallucinations, delusions, and paranoia at the time of the stabbing. Counsel stated that she would opine that such a person, when intoxicated, might not form the required specific intent for murder. However, defense counsel did not call her to testify.

Before sentencing, at a *Marsden*[2] hearing, defendant claimed that defense counsel failed to review the psychiatric report until the evening before trial which resulted in his decision not to present Dr. Chaffin as a witness. Defense counsel explained that his reason for not calling Dr. Chaffin to the stand was that, after the prosecution's case-in-chief, he believed the prosecutor had failed to prove the jealousy motive, and had failed to prove premeditation and deliberation. Counsel believed Dr. Chaffin's testimony would strengthen the prosecution case because Dr. Chaffin's report included Traci's statements to police that her husband was a jealous man when taking methamphetamine. Consequently, calling Dr. Chaffin to testify was the only way the People could get Traci's statements into evidence. This concerned defense counsel since the prosecution was attempting to prove first degree murder based on a jealousy motive. Counsel explained at the *Marsden* hearing that he had discussed all strategic moves with defendant before any decisions were made. Counsel stated that, after he and defendant considered the strengths and weaknesses of the prosecution's case, it was a mutually agreed upon strategic decision not to call Dr. Chaffin to the stand. Counsel believed that the decision was made together, and defendant was satisfied with it. He had thoroughly discussed this with defendant the night before and decided to rely on the state of the People's case instead of presenting Dr. Chaffin to the jury.

At the conclusion of the *Marsden* hearing, the court found the most important issue was defense counsel announcing to the jury that "there would be the presentation of

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

a doctor that methamphetamine use would negate specific intent or malice aforethought and then not calling that doctor." The court stated that "it might have hurt your case to a trier of fact. They're expecting something they did not get." However, the court went on to state that it appeared to be a calculated decision, with defendant's consent, to rest without the testimony of Dr. Chaffin based on counsel's belief that it would be more harmful than beneficial. The court noted that the decision seemed to be based on proper preparation, investigation, and background.

>       2.       Analysis

Defendant claims on appeal that, "counsel either did not know what was in Dr. Chaffin's report or had not thought through the implications of her testimony before informing the jury she would testify and the nature of her expected testimony." He claims that this lack of preparation "fell below accepted professional standards and was deficient performance."

On the contrary, the trial court, as fact finder at the *Marsden* hearing, expressly stated that the decision was an intelligent, tactical decision based on proper preparation, investigation, and background. It is not deficient performance for counsel to make a reasonable tactical choice. (*People v. Ochoa* (1998) 19 Cal.4th 353, 445.)

In addition, defendant has failed to demonstrate prejudice. Even if defense counsel had not promised to call Dr. Chaffin to testify or if Dr. Chaffin did testify, given the other evidence presented in the case including evidence of jealousy and the two stab wounds into the victim's torso, it is not reasonably likely defendant would have received a more favorable outcome.

There was no ineffective assistance of counsel.

10

III

*Insufficiency of Deliberation and Premeditation for First Degree*

Defendant claims there is insufficient evidence of deliberation and premeditation to support first degree murder because the stabbing was simply an instantaneous, jealous reaction. He is wrong.

In considering a claim of insufficiency of evidence on appeal, "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

" 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." [Citations.]' [Citation.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080; *People v. Perez* (1992) 2 Cal.4th 1117, 1123-1124.)

Our Supreme Court held that evidence sufficient to sustain a finding of premeditation and deliberation may include: (1) evidence of the defendant's actions before the killing (planning evidence), (2) evidence of the defendant's prior relationship or conduct with the victim (motive evidence), or (3) evidence of the nature of the killing (manner evidence). (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27.) These categories are descriptive guidelines only. They are not definitional elements, nor are they exclusive or exhaustive criteria. (*People v. Koontz, supra*, 27 Cal.4th at p. 1081; *People v. Perez, supra*, 2 Cal.4th at p. 1125.)

Here, a reasonable jury could find premeditation and deliberation based on all three types of evidence: planning, motive, and manner of killing.

11

As to evidence of planning, defendant brought a knife with him to Childress's apartment where the murder occurred. (*People v. Steele* (2002) 27 Cal.4th 1230, 1250 ["As to planning, the jury could infer that defendant carried the fatal knife into the victim's home in his pocket, which makes it 'reasonable to infer that he considered the possibility of homicide from the outset.' "].) In addition, defendant stabbed Endres in his chest and abdomen, rather than the arm or leg, which is further evidence that he planned to kill him.

Likewise, there is evidence of jealousy to support the motive theory. Moments before stabbing Endres, defendant accused him of looking at his wife, apparently in an inappropriate way. The jury heard evidence that one year prior to the stabbing, defendant, apparently in a jealous rage, had sprayed Mitchell with mace or pepper spray while Mitchell was riding in a car with Traci. Based on this evidence, a reasonable jury could infer that defendant stabbed Endres out of jealousy involving his wife.

Finally, the manner of killing demonstrates defendant's actions were deliberate and premeditated. Defendant forcefully plunged a knife into Endres's torso two separate times to a depth of four-and-one-half inches and four inches. One stab wound was to the heart and the other to the abdomen. Each stab by itself could have been fatal. The placement of the two stab wounds, along with the hilt marks, which indicated the force of the stabs, support the conclusion that the wounds were deliberately calculated to result in Endres's death. (*People v. Anderson*, *supra*, 70 Cal.2d at pp. 33-34.)

There was sufficient evidence to support premeditation and deliberation for first degree murder.

IV

*Denied* Marsden *Motion*

Defendant contends the trial court abused its discretion when it denied his *Marsden* motion to relieve counsel and to appoint new counsel. We find no error.

A.    *Relevant Procedure*

As noted above, defendant filed a *Marsden* motion before sentencing to relieve counsel and to appoint new counsel based on inadequate representation.  At the *Marsden* hearing, defendant complained that counsel failed to request an instruction on voluntary manslaughter and had not timely reviewed a psychiatric report prepared by Dr. Chaffin.  The trial court denied his *Marsden* motion.

B.    *Analysis*

We review the claim of erroneous denial of a *Marsden* motion under the deferential abuse of discretion standard.  (*People v. Earp* (1999) 20 Cal.4th 826, 876.)  "The law governing a *Marsden* motion 'is well settled.  "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance.  [Citation.]  A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]."  [Citations.]'  [Citation.]"  (*People v. Memro* (1995) 11 Cal.4th 786, 857.)

The court did not abuse its discretion in denying the *Marsden* motion.  The record shows that defense counsel was not ineffective for failing to request an instruction on voluntary manslaughter or failing to call Dr. Chaffin to the stand.  As explained in part I, above, a request for a voluntary manslaughter instruction would have been properly denied because there was no substantial evidence of sufficient provocation.  As explained in part II, above, there was no ineffective representation when defense counsel decided not to call the expert witness after stating that he would in his opening statement.  Therefore, defense counsel did not render ineffective assistance, and the trial court did not err when it denied defendant's *Marsden* motion.

DISPOSITION

The judgment is affirmed.


     NICHOLSON     , Acting P. J.


We concur:


     HULL     , J.


     DUARTE     , J.