Filed 9/14/21  P. v. Sierra CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SOCORRO SIERRA,<br><br>        Defendant and Appellant. | A159738<br><br>(Sonoma County<br>Super. Ct. No. SCR-718066) |

A jury convicted defendant Socorro Sierra of first degree felony murder with kidnapping special circumstances, kidnapping, and possession of a controlled substance with a firearm.  On appeal, defendant claims (1) there was insufficient evidence to support the kidnapping special circumstance finding and the kidnapping conviction; (2) the prosecutor committed misconduct during closing argument; and (3) the trial court abused its discretion in limiting the cross-examination of a witness.  We affirm.

**BACKGROUND**

Defendant was charged by third amended information with first degree murder with kidnapping special circumstances (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17)(B))[1]; kidnapping (§ 207, subd. (a)); and possession of a

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)). Firearm enhancements were alleged as to the first two charges (§12022.53, subd. (d)).

Defendant's post-arrest interview was videotaped and played for the jury. During the interview, defendant stated he had a marijuana business with his "good friend" Jose Martinez: Martinez would trim marijuana obtained from growers and defendant would find the buyers. Around May 2018, the business relationship deteriorated. Martinez was "not comfortable" with defendant and wanted to cut defendant out of the business and continue alone. Defendant, however, felt Martinez owed him a debt from a particular deal involving 109 pounds of marijuana. Martinez said he returned the marijuana because the grower came back, having not been paid. Defendant did not understand, as the marijuana had been trimmed and defendant had lined up the buyers. Defendant wanted to be compensated for his work, and asked Martinez for either $16,000 or $5,000 plus 20 pounds of marijuana. Martinez told defendant to give him time and he would make monthly payments on the debt.

A few weeks later, defendant picked up two men in his car, telling them they were going somewhere for "business." Defendant drove to a parking lot where he saw Martinez, started discussing the money owed, and then asked Martinez to get into the car because his voice was "getting louder." Martinez agreed, but said he could not be gone too long, as he had to go somewhere. Rather than staying in the immediate vicinity, defendant drove up a windy road and parked by a bridge near a creek.

When detectives asked defendant why he had not remained in the parking lot, he said he drove "that way" in order to "scare" Martinez into taking him seriously and paying the money. Defendant further stated

2

Martinez seemed scared while they were driving, asking why they were going that way and holding up his cell phone to show that he was not calling anyone. Martinez finally told defendant to stop, and when defendant pulled over Martinez got out of the car. Defendant also got out of the car, and put a gun in his back waistband. Defendant and Martinez continued talking, but when he saw Martinez had a pocket multi-tool in his hand, he shot him once in the head.

Defendant subsequently led police to Martinez's body, which defendant had moved and buried on the property where he lived using a backhoe rented for that purpose.

Upon his arrest, defendant was in possession of a nine-millimeter handgun, ammunition, and expended casing, as well as methamphetamines and marijuana. The forensic pathologist who performed an autopsy of Martinez testified that the expended bullet recovered from Martinez's brain was consistent with a nine-millimeter bullet. The DOJ's criminalist testified that the casing's firing pin impressions were consistent with test firings from the recovered handgun.

Video surveillance screenshots showed defendant's car driving past Martinez's house several times on the morning of the murder. And surveillance footage showed Martinez entering a commercial parking lot a few minutes before defendant arrived and parked next to Martinez's truck. Martinez then approached defendant's car, and defendant's car left the parking lot a few minutes later. The prosecution also presented video footage recreating the driving route to the bridge and depicting the remote area.

One of the two other men in the car testified for the prosecution. The day before the shooting, defendant had picked him and his housemate up to help build a tractor ramp. The witness had used methamphetamines the day

3

before; in fact, he was using drugs regularly at the time. When defendant picked the two up the following day, the witness thought they would be going back to finish the work. Instead, defendant drove to another town, Martinez got in the car, and they drove for approximately 15 minutes over a freeway and up to a bridge in a remote area with no houses or people around. While Martinez got into the car voluntarily, he looked scared as they were driving over the freeway and fidgeted with the door handle. The witness believed defendant's car doors locked when it reached a certain speed. During the drive, defendant said something in Spanish the witness could not understand, and then the witness's housemate took Martinez's phone. After Martinez and defendant exited the car, the witness heard a gunshot. When defendant returned to the car, he was smiling as he put the bullet casing up to a necklace on the rearview mirror and turned on music. Later, the witness's housemate told the witness that defendant wanted him to move Martinez's truck from the parking lot to another location, threatening that if the witness did not move it, his daughter might "come missing."

The witness further testified he had been charged with kidnapping and being an accessory after the fact, but pled guilty to the accessory charge in exchange for his testimony and received a one-year jail sentence with three years of probation. At the time of trial, the witness was in custody for failure to report to probation. He testified regarding his criminal history, which included one felony conviction for possession of a stolen vehicle and two misdemeanor convictions for possession of stolen property. Before trial, the People successfully moved in limine to exclude reference to the fact the witness had originally been charged with murder, since the count was

4

dismissed following the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437).[2]

During her closing argument, the prosecutor reviewed the elements for first degree murder, including an intent to kill. She then argued defendant "tricked the victim into getting into the car." Defense counsel objected. The court overruled the objection. The prosecutor continued that defendant had "tricked" Martinez by making him believe it would be just a short drive, but instead had scared him by driving a long way to an extremely remote location with two other men and taking away his phone. She argued "all of these actions" showed defendant had "the intent to kill." The prosecutor then moved to the elements for the kidnapping charge and special circumstance. She stated: "So they tricked him to get into the car. Under the law, that alone does not make it kidnapping." She continued: "I am not telling you it is kidnapping from the moment he got into the car. . . . It does become kidnapping when he withdraws the consent. When does that happen? When he becomes scared. When he goes outside of what he reasonably expected to happen."

The jury found defendant guilty as charged and found true the kidnapping special circumstance and firearm enhancements. The trial court sentenced defendant to life without parole on the murder count, consecutive to a term of 25 years to life on the firearm enhancement, and four years on the possession count. The sentence on the kidnapping count was stayed.

---

[2] SB 1437 was enacted in 2018 and took effect on January 1, 2019. (Stats. 2018, ch. 1015.) Among other changes, SB 1437 amended section 189 to limit liability for murder under a felony murder or natural and probable consequences theory to a person who is the actual killer, has the intent to kill and aids or abets the actual killer, or is a major participant in the underlying felony and acts with reckless indifference to human life. (Stats. 2018, ch. 1015, §§ 1, 3.); see § 189, subd. (e)(1)–(3).)

## DISCUSSION

### *Substantial Evidence*

Defendant maintains the kidnapping special circumstance finding and conviction must be vacated because there was insufficient evidence to establish that he detained Martinez "by force or fear."

"In evaluating a claim regarding the sufficiency of the evidence, we review the record 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 712.)  " 'To assess the evidence's sufficiency, we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142, italics omitted.)  Reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 207, subdivision (a) provides:  "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping."  The phrase "or by any other means of instilling fear" was added in 1990 to expand the definition of the crime.  (Stats. 1990, ch. 55, § 1, p. 393; Assem. Com. on Pub. Safety, Analysis of Sen. Bill No. 1564 (1989–1990 Reg. Sess.) as amended Jan. 16, 1990, pp. 2–3.)

Prior to that amendment, however, courts had already agreed force need not be physical to constitute kidnapping:  it could be accomplished through threats of force or "the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the accused and such apprehension is not unreasonable under the circumstances." (*People v. Stephenson* (1974) 10 Cal.3d 652, 660 (*Stephenson*).)  Courts had also agreed kidnapping could be established where a victim initially agrees to accompany the defendant, but his or her liberty is subsequently restrained by threat or force.  (*People v. Camden* (1976) 16 Cal.3d 808, 814.)

After the amendment, the California Supreme Court discussed the two bases for kidnapping—use of force or fear to compel asportation—in *People v. Majors* (2004) 33 Cal.4th 321, 326–327 (*Majors*).  The court explained asportation by fraud alone, not force or fear, is insufficient to constitute kidnapping because "the circumstances suggest the victim exercised free will in accompanying the perpetrator."  (*Id.* at pp. 327, 331.)  While declining to delineate the precise parameters of the language " 'any other means of instilling fear,' " the court explained that a kidnapping may occur where fear accomplishes the same thing as force:  in other words, the victim is compelled by fear of " 'harm or injury from the accused.' "  (*Id.* at pp. 333–334.)  The court distinguished that type of fear from "fear the perpetrator will not attend a high school prom with the victim, or other fears substantially removed from the use of force."  (*Id.* at p. 334.)

Here, the evidence was sufficient to support a finding that defendant restrained Martinez "by means of instilling fear" and thus satisfied the definition of kidnapping under section 207.  During his post-arrest interview, defendant admitted he drove Martinez a considerable distance to a remote area with the explicit intent to scare him.  Defendant further admitted his

7

plan worked: Martinez was scared while they were driving, asked where they were going, and told defendant to stop. The passenger witness similarly testified that Martinez looked scared and began fidgeting with the door handle, but the witness believed the doors locked at a certain speed. The witness also testified defendant said something in Spanish and thereafter, the witness's housemate took Martinez's phone. The jury could reasonably infer from this testimony that defendant ordered Martinez to relinquish his phone and thus maintained control of Martinez in his moving vehicle.

In sum, the totality of the evidence amply supports a finding that Martinez did not assent to driving to the remote locale and to remaining in the car of his own "free will," but rather, did so out of fear and because defendant had essentially trapped him in the car. (*Majors*, *supra*, 33 Cal.4th at p. 331; see *Stephenson*, *supra*, 10 Cal.3d at p. 660.)

### *No Prosecutorial Misconduct*

Defendant also maintains the prosecutor committed reversible misconduct when she argued in closing that defendant had "tricked" Martinez into getting into the car.

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established.' " (*People v. Hill* (1998) 17 Cal.4th 800, 819.) A prosecutor's behavior violates the federal Constitution " ' " 'when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " ' " (*Ibid.*) " 'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*Ibid.*)

8

In reviewing a prosecutor's comments to the jury, "we must view the statements in the context of the argument as a whole." (*People v. Cole* (2004) 33 Cal.4th 1158, 1203.) Moreover, a prosecutor has " 'wide latitude to discuss and draw inferences from the evidence at trial,' and whether 'the inferences the prosecutor draws are reasonable is for the jury to decide.' " (*Ibid.*) The relevant question is " 'whether there is a reasonable likelihood that the jury construed or applied any of the complained-of-remarks in an objectionable fashion.' " (*Ibid.*)

Here, defendant contends the prosecutor committed misconduct by (1) arguing facts not in evidence, and (2) wrongly suggesting to the jury that defendant's purported trickery amounted to kidnapping. Both contentions fail.

First, the prosecutor relied on defendant's admissions during his post-arrest interview: Martinez had told defendant he could not be too long because he had to go somewhere, but defendant nevertheless drove out of town to a remote locale because he wanted to scare Martinez. Accordingly, the prosecutor did not rely on facts not in evidence, and this evidence was sufficient to support an argument that defendant led Martinez into believing the drive would be short and thereby tricked him into getting into the car.

Second, it is not reasonably likely the prosecutor's argument led the jury to misunderstand the requisite elements of kidnapping. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1203.) The prosecutor first discussed the *intent to kill* element of the first degree murder charge. Then, turning to the kidnapping charge, she correctly told the jury: "So they tricked him to get into the car. Under the law, that alone does not make it kidnapping." Accordingly, the prosecutor did not misstate the law.

Even if the prosecutor had committed misconduct (which she did not), defendant has not demonstrated that it is reasonably probable a result more favorable to defendant would have occurred absent the claimed misconduct. (*People v. Castillo* (2008) 168 Cal.App.4th 364, 386.)  Defendant claims he was prejudiced because a juror could have believed the kidnapping was established when Martinez was "tricked" into getting into the car.  The prosecutor, however, explicitly stated otherwise, telling the jury that, alone, was *not* sufficient to establish kidnapping.  Rather, the prosecutor went on to explain that the kidnapping occurred *during* the drive:  "I am not telling you it is kidnapping from the moment he got into the car. . . .  It does become kidnapping when he withdraws the consent.  When does that happen?  When he becomes scared.  When he goes outside of what he reasonably expected to happen."  Moreover, the jury was correctly instructed on the law using the CALCRIM No. 1215 instruction on kidnapping, and also instructed counsel's arguments are not the law.  Additionally, there was abundant evidence to support the kidnapping special circumstance and conviction.

### No Abuse of Discretion in Limiting Cross-Examination

Defendant lastly claims the trial court abused its discretion in precluding cross-examination of the passenger witness regarding his original murder charge.

The constitutional right of confrontation "includes the right to cross-examine adverse witnesses on matters reflecting on their credibility." (*People v. Quartermain* (1997) 16 Cal.4th 600, 623 (*Quartermain*).)  The confrontation clause, however, guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 20.)  Trial courts retain wide latitude to impose reasonable limits

10

on cross-examination based on, among other things, marginal relevance or potential confusion of the issues. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) A trial court's limitation on cross-examination pertaining to the credibility of a witness violates the confrontation clause only when "a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Quartermain*, at p. 624.)

Defendant maintains that had the jury been aware of the original murder charge, it would have had a different impression of the witness's credibility because, at the time the witness entered his plea, the constitutionality of SB 1437 was "unsettled" and could have influenced the witness to "go to the police and tailor his testimony to favor himself."

To begin with, this argument rests on speculation that the witness might have known or been told about the new law before he went to the police. "[E]xclusion of evidence that produces only speculative inferences is not an abuse of discretion." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684; see Evid. Code, § 352.)

In any event, a reasonable jury would not have received a significantly different impression of the witness's credibility had such cross-examination been permitted. (*Quartermain, supra,* 16 Cal.4th at pp. 623–624.) The witness testified he was originally charged with kidnapping but pled to the lesser accessory charge as part of his plea deal. He also testified regarding another potential reason to cooperate—or give a biased account—beyond the dismissal or reduction of charges against him: defendant had threatened his daughter. Thus, the jury was well aware the witness had a motive for favoring himself in his account of what happened.

Moreover, the witness testified on several other topics related to his credibility, including his drug use, criminal history, and current custody status for violating probation. (See *People v. Manson* (1976) 61 Cal.App.3d 102, 137 [impeaching effect of drug use during critical events was properly placed before jury]; Evid. Code, § 788 [felony conviction may be shown by examination to attack witness credibility]; *People v. Valenzuela* (1984) 151 Cal.App.3d 180, 194 [jury may draw inference of diminished credibility for incarcerated witness].)

Accordingly, the trial court acted well within its direction in precluding cross-examination on the witness's original murder charge.

Even if the trial court had abused its discretion (which it did not), any such error was harmless. (*People v. Dyer* (1988) 45 Cal.3d 26, 47–48.) Defendant claims he was prejudiced because the witness's credibility was "critical" to the prosecution's case on the kidnapping count and special circumstance. Not so. As we have discussed, defendant's own admissions that he drove a considerable distance into a remote locale in order to scare Martinez and that Martinez appeared scared, supported the conviction and finding. The witness's testimony did not contradict any of these statements, but instead corroborated that defendant did drive to a remote area and Martinez, indeed, looked scared. The physical evidence, forensic evidence, and surveillance evidence also all corroborated defendant's admissions. Accordingly, on this record, any error in restricting cross-examination of the passenger witness was harmless.

Having considered and rejected each of defendant's claims on the merits, we likewise reject his assertion that the cumulative effect of the supposed errors requires reversal. (*People v. Kipp* (1998) 18 Cal.4th 349, 383.)

**DISPOSITION**

The judgment is affirmed.

_____

Banke, J.


We concur:


_____

Humes, P.J.


_____

Margulies, J.


A159738, People v. Sierra

14